UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JUDY LYNN CARROLL,<br><br>Defendant. | CR. 17-50130-JLV<br><br><br><br>ORDER |

## INTRODUCTION

Defendant Judy Lynn Carroll, appearing *pro se*, filed a motion for compassionate release on January 27, 2021.   (Docket 90).   Pursuant to Amended Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on her motion.   (Dockets 90-93, 95, 100-01, 103 & 106).   For the reasons stated below, defendant's motion is denied.

## AMENDED STANDING ORDER 20-06

Amended Standing Order 20-06,[1]  captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system."   (ASO 20-06 at p. 1).   By the standing order, the FPD and the United States Attorney for the District of

---

[1]See https://www.sdd.uscourts.gov/socraa ("ASO 20-06").

South Dakota are "to place [the defendant] into one of four categories[.]"   Id.

¶ 4.   Those categories are:

a.   High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

b.   Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

c.   Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

d.   Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.   The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."   Id.

## MS. CARROLL'S CLASSIFICATION

On February 2, 2021, the FPD and the U.S. Attorney filed a notice designating Ms. Carroll's case as an Intermediate Priority.   (Docket 91).

## FACTUAL BACKGROUND

Ms. Carroll pled guilty to four counts of wire fraud in violation of 18 U.S.C. § 1343 and a single count of tax evasion in violation of 18 U.S.C. § 7201.   (Dockets 46 & 56).   Ms. Carroll's offenses arose out of a scheme to defraud her friends and acquaintances of substantial amounts of money over an extended period of time and the failure to pay income taxes on those ill-gotten gains.

2

On June 6, 2019, Ms. Carroll appeared before the court for sentencing. (Docket 78).   A presentence investigation report ("PSR") ordered by the court calculated Ms. Carroll's advisory guideline range as 46 to 57 months of imprisonment based on a total offense level of 23 and her criminal history category I.   (Docket 67 ¶ 74).   The financial loss to Ms. Carroll's individual victims totaled $1,240,236.01.   Id. ¶ 29.   Many of her victims suffered substantial financial hardship and untold emotional upheaval as a result of Ms. Carroll's schemes.   Id. ¶ 30.   For instance, one elderly couple turned over their entire life savings to Ms. Carroll and had to forego necessary medical treatment as a result.   Id.   Another person was unable to pay his mortgage and had to rely on financial support from his children.   Id.   Another person, who thought Ms. Carroll was her "best-friend," had to file bankruptcy, was forced to sell her home and was divorced by her husband as a result.   Id.   To further her scheme, Ms. Carroll used sophisticated means to convince her victims to give her money under false pretenses.   Id. ¶ 31.   This included using letters acquired from a tax consultant and an attorney, which fraudulently represented her net worth.   Id.   Her offense conduct spanned more than 15 years, during which time Ms. Carroll often played on the emotions of her victims to give her money.   See, e.g., Docket 80 at pp. 46-47.

After reviewing the PSR with Ms. Carroll, hearing from the victims present in court, reading letters from other victims into the record, taking the sentencing recommendations of counsel and listening to Ms. Carroll's

statements, the court gave notice of a possible upward departure above the guideline range.   Id. at pp. 52-53; see also Docket 82.   Thereafter, the court adjourned the hearing to allow the parties an opportunity to prepare and respond to the possibility of a greater sentence.

On August 7, 2019, the court reconvened the sentencing hearing and sentenced Ms. Carroll to 84 months in custody followed by three years of supervised release.   (Dockets 86 & 87 at pp. 2-3).   The court departed upward from the calculated guideline range by two levels based on substantial harm to the indirect victims of Ms. Carroll's scheme.   (Docket 87-1 at p. 5).   The court also varied upward from the guideline range after considering the 18 U.S.C. § 3553(a) factors "based on the seriousness and nature of the offense, [to] deter criminal conduct, protect the public, and to avoid sentencing disparities with similar-situated defendants."   Id.   The court noted Ms. Carroll's offense "was in duration of over 15 years, involved numerous victims, and a significant amount of fraudulent income."   Id.   Ms. Carroll was ordered to pay restitution to the individual victims in the amount of $1,240,236.01, and $310,078.00 to the IRS for tax evasion.   (Docket 87 at pp. 5-7).

Ms. Carroll is an inmate at FCI Dublin, a low security facility with an adjacent minimum security camp in Dublin, California.   (Docket 90 at p. 1). The total inmate population at FCI Dublin is currently 886 persons.   Fed. Bureau Prisons, https://www.bop.gov/locations/institutions/dub/ (last checked Apr. 27, 2021).   As of April 27, 2021, there was one active COVID-19

case among inmates and two active cases among staff at FCI Dublin.

https://www.bop.gov/coronavirus/ (last checked Apr. 27, 2021).   FCI Dublin

reports no deaths as a result of COVID-19, and 252 inmates and 21 staff have

recovered as of April 27, 2021.   Id.

Ms. Carroll has a scheduled release date of May 5, 2025.   (Docket 92 at

p. 156).   Ms. Carroll has served approximately 28 percent of her statutory

sentence, and under her current status in the Bureau of Prisons ("BOP") she is

eligible for home detention on November 22, 2024.   Id. at pp. 156-57.   Ms.

Carroll is 61 years old.   Id. at p. 155.

## MS. CARROLL'S MOTION

Ms. Carroll's *pro se* motion seeks compassionate release on the basis of

extraordinary and compelling reasons in light of the COVID-19 pandemic, her

underlying health conditions and the alleged lack of medical care available to

her in confinement.   (Docket 90 at p. 1).   If released, Ms. Carroll plans to live

at her home in Kalispell, Montana, with her husband.   Id.

On February 16, 2021, counsel for Ms. Carroll filed a supplement to her

*pro se* motion.   (Docket 95).   Ms. Carroll, through counsel, argues she is at

increased risk of severe illness from COVID-19 due to hypertension,

hypothyroidism, vitamin B and D deficiencies and obesity.   Id. at pp. 1-2.   Ms.

Carroll contends these conditions coupled with the conditions of her

confinement in a crowded facility during the COVID-19 pandemic are

"extraordinary and compelling reasons" for a reduced sentence under the policy

5

statements adopted by the United States Sentencing Commission.   Id. at pp. 6-12.   Ms. Carroll submits a sentence of time served is also consistent with the sentencing factors of 18 U.S.C. § 3553(a).   Id. at p. 12.   She argues a sentence of home confinement or supervised release would allow her the opportunity to work and make payments toward her restitution obligations. Id. at p. 13.   Ms. Carroll contends she is a good candidate for compassionate release because of her lack of criminal history.   Id. at pp. 13-14.

The court conducted a detailed review of Ms. Carroll's medical records in this case.   Ms. Carroll's medical records confirm the following medical conditions:

- Hypothyroidism.   (Docket 92 at p. 1);

- Vitamin B and Vitamin D deficiency.   Id.;

- Essential (primary) hypertension.   Id.;

- Rosacea.   Id.;

- Low back pain.   Id.;

- Chest pain, unspecified.   Id.;

- Headache, unspecified.   Id.; and

- Sprain of shoulder joint.   Id.

Ms. Carroll's medication regimen includes amlodipine for hypertension, duloxetine for shoulder pain, vitamin D tablets, thyroid tablets, monthly vitamin B-12 injections and ibuprofen.   Id. at pp. 5, 14 & 53-54.   Ms. Carroll is 66 inches tall and her most recent recorded weight was 193 pounds on

6

November 5, 2019.   <u>Id.</u> at p. 125.   Based on her height and weight, Ms.

Carroll has a body mass index ("BMI") of 31.1, which puts her in the obese

category.   See <u>Adult BMI Calculator</u>, Ctr. for Disease Control & Prevention,

<u>https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_c</u>

<u>alculator/bmi_calculator.html</u> (last checked Apr. 6, 2021).

### UNITED STATES' OPPOSITION

The government opposes Ms. Carroll's motion for compassionate release.

(Docket 103).   First, the government disputes whether the evidence is

sufficient to demonstrate Ms. Carroll has a diagnosis of hypertension and/or

obesity.   <u>Id.</u> at pp. 7-9.   Next, the government argues even if she has these

conditions, there is no evidence they cannot be properly managed by the

medical staff at FCI Dublin.   <u>Id.</u> at pp. 9-10.   The government also notes Ms.

Carroll is fully capable of providing self-care.   <u>Id.</u>

Finally, the government argues the 18 U.S.C. § 3553(a) factors weigh

against granting the motion for compassionate release.   <u>Id.</u> at pp. 10-12.   The

government reminds the court Ms. Carroll's fraudulent activity was intentional,

spanned approximately 16 years and she stole more than $1,200,000 from

multiple victims through various misrepresentations and false promises.   <u>Id.</u>

at p. 11.   In sum, the government argues Ms. Carroll has not served a

significant portion of her sentence for serious offenses that had a severe impact

on the victims of her fraud.   <u>Id.</u> at pp. 11-12.   According to the government,

releasing Ms. Carroll early does not promote respect for the law, provide just punishment, protect the public from her or deter similar criminal activity.   Id.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he or she exhausts the administrative remedies mandated by the statute.   18 U.S.C. § 3582(c)(1)(A)(i).   The government does not contend Ms. Carroll failed to exhaust her administrative remedies. (Docket 103 at p. 2).   The evidence demonstrates Ms. Carroll did, in fact, make a request for compassionate release to the warden that was denied.   (Docket 92 at pp. 161-63).   Accordingly, the court addresses the merits of Ms. Carroll's request.

### Extraordinary and Compelling Reasons

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release."   United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020).   That task was left to the United States Sentencing Commission.   See 28 U.S.C. § 994(t).   Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."   See id.   Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and

8

compelling.    U.S.S.G. § 1B1.13 comment. n.1.    The four categories have not been updated since December 2018 when the First Step Act became law.[2]

The court previously surveyed the status of the law as to a court's authority under the First Step Act.    E.g., United States v. Thunder Hawk, CR. 14-50008, 2021 WL 253456, at *5 (D.S.D. Jan. 26, 2021); United States v. Magnuson, CR. 15-50095, 2020 WL 7318109, at *4-5 (D.S.D. Dec. 11, 2020); United States v. King, CR. 15-50050, 2020 WL 6146446, at *4-5 (D.S.D. Oct. 20, 2020).    A summary of that survey is sufficient here.

This court held it retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release."[3]    E.g., Magnuson, 2020 WL 7318109, at *5 (quoting United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020)); see also McCoy, 981 F.3d at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13

---

[2]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]."    United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

[3]The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declined to do so.    United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020) and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).

in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."); United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); and United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion").

The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Ms. Carroll relies on her age, medical conditions and being incarcerated during the COVID-19 pandemic as "extraordinary and compelling reasons" warranting compassionate release.   See generally Dockets 90, 95 & 106. Despite the expanded authority under the First Step Act, the court finds Ms. Carroll has not met her burden of proof by presenting "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).

Ms. Carroll is 61 years old.   The Centers for Disease Control and Prevention ("CDC") recognizes that the risk of severe illness as a result of COVID-19 increases with age, with older adults at higher risk.   See Older

Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/older-adults.html (updated Apr. 2, 2021) (last checked Apr. 6,
2021).   The CDC reports eight out of ten COVID-19 deaths are in people 65
years old and older.   Id.   The CDC identifies people age 50-64 as being 25
times more likely to require hospitalization as compared to those age 5-17
years old, though the greatest risk is to those 75 and older.   Id.   Ms. Carroll's
age is one of the factors the court considers in evaluating her motion for
compassionate release.

Adults of any age are at increased risk of severe illness from COVID-19 if
they have certain conditions.   Recently, the CDC updated its understanding of
the health conditions increasing the risk from COVID-19.   See People with
Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/
need-extra-precautions/groups-at-higher-risk.html (updated Mar. 29, 2021)
(last checked Apr. 27, 2021).   The CDC now states individuals with the
following conditions *can* be more likely to become severely ill from COVID-19:
cancer, chronic kidney disease at any stage, chronic lung diseases (including
moderate to severe asthma, chronic obstructive pulmonary disease (COPD),
cystic fibrosis and pulmonary hypertension), dementia or other neurological
conditions, diabetes (type 1 or type 2), heart conditions (such as heart failure,
coronary artery disease, cardiomyopathies or hypertension), HIV infection,
immunocompromised state, liver disease, overweight and obesity, being a
current or former smoker, history of stroke or cerebrovascular disease,

11

substance abuse disorders and several others.   Id.   Ms. Carroll has two of these conditions: obesity and hypertension.

Courts in the District of South Dakota and elsewhere have concluded obesity, alone or in combination with other conditions, does not necessarily warrant a reduction in sentence for extraordinary and compelling reasons. See United States v. Davila, 3:17-CR-30089, 2020 WL 7041746, at *3 (D.S.D. Dec. 1, 2020) (finding defendant with primary hypertension, obesity and abnormal lung CT scan did not establish extraordinary and compelling reasons); United States v. Oakie, 3:18-CR-30039, 2020 WL 7022950, * 3 (D.S.D. Nov. 30, 2020) (denying compassionate release to defendant with hypertension, obesity and blindness in one eye); United States v. McAbee, CR. 14-40027, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); see also United States v. Williams, CRIMINAL ACTION No. 15-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) (concluding suffering from "obesity during the age of the COVID-19 pandemic does not necessarily mean, in its own, that extraordinary and compelling reasons justify" a sentence reduction).

This court denied compassionate release under circumstances similar to Ms. Carroll's.   See United States v. Nespor, CR. 18-50014, 2021 WL 253866, at *6 (D.S.D. Jan. 26, 2021) summarily aff'd (8th Cir. Feb. 16, 2021) (concluding a 57-year-old defendant with conditions of obesity and

12

hypertension did not demonstrate extraordinary and compelling reasons for compassionate release).

Ms. Carroll's hypertension is being monitored while she is incarcerated, and she receives medication to treat the condition.   At a BMI of 31.1, Ms. Carroll is slightly over the threshold for obesity, but she has demonstrated the ability to lose weight while incarcerated.   See Docket 92 at p. 125.   Ms. Carroll's age, while a factor, does not significantly alter the court's impression. Overall, the medical records show Ms. Carroll is generally healthy and her medical treatment while incarcerated has primarily been related to headache, shoulder pain and thyroid issues.   Docket 92 at pp. 2-3, 11-15, 101-05.   The court concludes Ms. Carroll's age, obesity and hypertension do not constitute "extraordinary and compelling reasons" to warrant compassionate release in the time of COVID-19.

 Ms. Carroll's health conditions are capable of being controlled and managed while in a custodial setting and the evidence supports the medical staff at FCI Dublin is currently doing so.   See United States v. Ayon-Nunez, No. 1:16-cr00130, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation omitted).   Ms. Carroll's general concern about incarceration during the COVID-19 pandemic is understandable, but it is not an "extraordinary and compelling reason" justifying release.   The court finds Ms. Carroll has not met her burden of proof

13

and presented "extraordinary and compelling reasons" based on her medical conditions, age and conditions of confinement warranting a sentence reduction under § 3582(c)(1)(A)(i).

The court also recognizes the BOP's implementation of a COVID-19 vaccination program and administration of vaccines to inmates and staff.   See BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last checked Apr. 27, 2021).   As of April 27, 2021, 146,971 doses have been administered systemwide.   Id.   At FCI Dublin 159 staff and 64 inmates were fully inoculated as of April 27, 2021.   See Learn More About Vaccinations and View Individual Facility Stats, https://www.bop.gov/coronavirus/ (last checked Apr. 27, 2021).   According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

Id.

### 3553(a) Factors

Even if the court were to consider Ms. Carroll's circumstances as "extraordinary and compelling reasons," the court concludes the § 3553(a) factors do not support relief.   These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law,

14

provide just punishment, deter criminal conduct and protect the public from further crimes of the defendant, among others.   18 U.S.C. § 3553(a)(1)-(7).

The court outlined in some detail above the nature and circumstances of Ms. Carroll's scheme to defraud numerous victims of significant amounts of money over more than 15 years.   The harm caused by Ms. Carroll's offenses was not limited to her monetary gains and likely her victims will never be fully restored for their financial losses and emotional turmoil.   The court referenced parts of the transcript of Ms. Carroll's sentencing hearing on June 6, 2019, wherein those harms were discussed at length.   The June 6, 2019, sentencing hearing ultimately resulted in an adjournment to allow Ms. Carroll to prepare for and respond to the possibility of an upward departure from the calculated sentencing guideline range.   See Dockets 78, 80 & 82.

After reconvening on August 7, 2019, the court departed upward and sentenced Ms. Carroll to 84 months incarceration to fully account for the seriousness of her conduct, the harm caused to her direct and indirect victims, the long duration of her fraudulent scheme and all the other 3553(a) factors. (Dockets 87 at pp. 2-3 & 87-1 at pp. 3-5).   Granting Ms. Carroll's compassionate release motion when she has served less than one-third of her sentence would not be consistent with the seriousness of the offenses, promote respect for the law or provide just punishment for the offenses.

## ORDER

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 90) is denied.

Dated May 6, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE