UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JUDY LYNN CARROLL,<br><br>Defendant. | CR. 17-50130-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Judy Carroll filed a motion for compassionate release. (Docket 120). Pursuant to Standing Order 32-02, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Ms. Carroll's motion. (Dockets 92, 93, 110 & 126). For the reasons stated below, defendant's motion is denied.

**STANDING ORDER 23-02**

Standing Order 23-02,[1] captioned "Revising the Procedure for Compassionate Release Motions Under the First Step Act," "revis[ed] the procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)." (SO 32-02). Under the

---

[1] See https://www.sdd.uscourts.gov/content/standing-order-23-02-revising-procedure-compassionate-release-motions-under-first-step-act ("SO 32-02").

order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act. If the FPD believes itself to have a conflict of interest or other inability to represent a person who qualifies under (a) and (b) above, the FPD shall notify the magistrate judge in the division where the case is pending so that the magistrate judge may consider the appointment of a CJA panel attorney." Id. at ¶ 1.

## FACTUAL BACKGROUND

Ms. Carroll pled guilty to four counts of wire fraud in violation of 18 U.S.C. § 1343 and a single count of tax evasion in violation of 18 U.S.C. § 7201. (Dockets 46 & 60). Ms. Carroll's offenses arose out of a scheme to defraud her friends and acquaintances of substantial amounts of money over an extended period of time and the failure to pay income taxes on those ill-gotten gains.

Ms. Carroll's guideline range was 46 months to 57 months imprisonment based on a total offense level of 23 and a criminal history category of I, with zero criminal history points. (Docket 67 at ¶¶ 53 & 74). The financial loss to Ms. Carroll's individual victims totaled $1,240,236.01. Id. at ¶ 29. Ms. Carroll was sentenced to a term of imprisonment of 84 months and 3 years supervised release. (Dockets 86 & 87 at pp. 2-3).

The court departed upward from the calculated guideline range by two levels based on substantial harm to the indirect victims of Ms. Carroll's

scheme.  (Docket 87-1 at p. 5).  The court also varied upward from the guideline range after considering the 18 U.S.C. § 3553(a) factors.  Id.  The court held, "based on the seriousness and nature of the offense, [to] deter criminal conduct, protect the public, and to avoid sentencing disparities with similar-situated defendants," the court noted Ms. Carroll's offense "was in duration [for] over 15 years, involved numerous victims, and a significant amount of fraudulent income."  Id.  Ms. Carroll was ordered to pay restitution to the individual victims in the amount of $1,550,314.01.  (Docket 87 at p. 6).

Ms. Carroll is an inmate at FCI Dublin, a low security facility with an adjacent minimum security camp in Dublin, California; her scheduled release date is May 22, 2024.  See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last viewed Apr. 27, 2023).

## MS. CAROLL'S CLASSIFICATION

On February 2, 2021, the FPD and the U.S. Attorney filed a notice designating Ms. Carroll's case as an Intermediate Priority.  (Docket 91).

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The inmate bears the burden to establish that compassionate release is warranted. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). The district court is not required to investigate possible avenues for relief or to develop the record in support of a motion. United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Congress did not define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. Id. Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served and (4) compelling family circumstances. Id. Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in

4

combination with, the reasons described" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D). These categories have not been updated since December 2018 when FSA became law.[2]

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act"). The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act. It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the

---

[2]Until recently the United States Sentencing Commission lacked a quorum, and the newly established commission has not amended the United States Sentencing Guidelines.

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Ms. Carroll exhausted her administrative remedies. Ms. Carroll's request for compassionate release was made to FCI Dublin's Warden on April 29, 2020. (Docket 92 at pp. 161-62). Ms. Carroll requested release due to her medical issues. Id. Her request was denied on July 2, 2020. Id. at p. 163.

Ms. Carroll originally sought compassionate release on January 27, 2021. (Docket 90). She sought relief on the basis of extraordinary and compelling reasons in light of the COVID-19 pandemic, her underlying health conditions, specifically an increased risk of severe illness from COVID-19 due to hypertension, hypothyroidism, vitamin B and D deficiencies and obesity, and the alleged lack of medical care available to her in confinement. Id. at p. 1. That request was denied on May 6, 2021. (Docket 112). This court noted it denied compassionate release under circumstances similar to Ms. Carroll's. See United States v. Nespor, CR. 18-50014, 2021 WL 253866, at *6 (D.S.D. Jan. 26, 2021) summarily aff'd (8th Cir. Feb. 16, 2021) (concluding a 57-year-old defendant with conditions of obesity and hypertension did not demonstrate extraordinary and compelling reasons for compassionate release).

Ms. Carroll appealed the United States Court of Appeals for the Eighth Circuit from the Order Denying Motion for Relief Under the First Step Act. (Docket 113). The Eighth Circuit Court of Appeals summarily affirmed the order of the district court denying compassionate release. (Docket 116).

## B. **Defendant's Motion for Compassionate Release**

On January 25, 2022, Ms. Carroll again filed a motion for Compassionate Release. (Docket 120). On February 3, 2022, she filed a second motion. (Docket 121). Ms. Carroll seeks compassionate release due to her age, health conditions and the BOP conditions. (Dockets 120 & 121).

Ms. Carroll requests court appointed counsel to assist her in this matter. Id. There is no Sixth Amendment right to counsel nor is there any statutory right to counsel with respect to a motion under 18 U.S.C. § 3582(c). United States v. Townsend, 98 F.3d 510, 512–513 (9th Cir. 1996) (affirming district court's refusal to appoint counsel for a sentence reduction motion under § 3582(c)). Nevertheless, Catherine Seely was appointed to represented Ms. Carroll. (Docket 124). Ms. Carroll submitted a 297-page supplement, stating that since the last supplement, she has "been diagnosed with two chronic lung diseases that the CDC has recognized make a person more likely to get very sick from COVID-19: asthma, and chronic obstructive pulmonary disease (COPD). Exhibit E p. 1-2; Exhibit F p.14-16." (Docket 125 at p. 4).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Center for Disease Control and Prevention (CDC) updated its current understanding of these risks. See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention (Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/needextra-precautions/people-with-medical-conditions.html. The CDC identified the following conditions as ones that pose an increased risk of severe illness from COVID-19:

7

cancer, COPD, obesity (a BMI of 30 or higher), moderate to severe asthma and hypertension. Id. The CDC classifies those age 65 or over at high risk of getting sick from COVID-19.

Ms. Carroll's medical records confirms she has hyperthyroidism, vitamin B and D deficiency, essential (primary) hypertension, bronchitis, COPD, asthma, cellulitis, unspecified, rosacea, arthropathy, low back pain, rotator cuff tear or rupture of shoulder, chest pain, headache and sprain of shoulder joint. (Docket 126 at pp. 1-2). She is obese, as she has a BMI of 31.1. Id. at p. 4; Docket 120 at p. 4. She had a confirmed case of COVID-19. (Docket 126 at p. 2). She is 63 years old. Ms. Carroll suffers from hypertension; she notes she

> has continually been seen for her hypertension by medical staff at FCI Dublin, she continues to have elevated blood pressure readings, indicating that her hypertension is not under control. See Exhibit F at 4 (displaying a reading of 172/94); Exhibit G at 1 (reading 145/80); Exhibit G at 7 (reading 165/85); Exhibit G at 1 (with readings of 160/78 and 158/72); Exhibit G at 14 (reading 166/85); Exhibit G at 15 (reading 164/82 and stating 'HTN not controlled'). The doctors at FCI Dublin have attempted to prescribe various medications to Carroll at different times in an effort of getting her blood pressure under control, but their efforts have seemingly not arrived at a suitable medication or combination of medications to bring her blood pressure into safe numbers. See Exhibit G at 5; Exhibit F at 2 (noting different medications prescribed for Carroll's essential (primary) hypertension at different times yet still yielding elevated readings).

(Docket 125, at p. 5). David Duncan, D.O., Clinical Director at FCI Dublin, ("Dr. Duncan") stated Ms. Carroll "has severe hypertension that has been resistant to standard therapy, and also difficult to treat due to her adverse reaction profile to numerous medications. (Docket 120 at p. 4). Ms. Carroll's

8

medical records show her hypertension is continuously monitored, and she receives appropriate and frequent medical care for her conditions.

Although Ms. Carroll suffers from asthma and COPD, her medical records do not show the level at which she suffers from either condition; thus, this cannot be an extraordinary or compelling reason justifying compassionate release. See United States v. Blue Bird, No. CR. 16-50064-JLV, 2021 WL 1564362, at *3 (D.S.D. Apr. 21, 2021) (denying compassionate release because nothing in the records "indicate Mr. Blue Bird's asthma rises to the level of moderate to severe"); United States v. Highbull, No. CR. 16-40029, 2020 WL 7060089 (D.S.D. Dec. 2, 2020) (denying compassionate release due to finding the defendant's medical conditions, COPD, Asthma, high cholesterol, prediabetes and a past case of COVID-19 to be properly managed in prison).

Ms. Carroll is obese, as she has a BMI of 31.1.  (Docket 120 at p. 4). Obesity is a condition that poses an increased risk of severe illness from COVID-19.  Several courts, including courts in the District of South Dakota, have concluded that obesity on its own during the COVID-19 pandemic does not necessarily warrant a reduction in sentence for extraordinary and compelling reasons.  See United States v. McAbee, No. 4:14-CR-40027-01, 2020 WL 5231439, at *3 (D.S.D. Sep. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); United States v. Saenz, No. 3:10-CR-30027-01, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not warrant compassionate release).

9

Ms. Carroll's age and health conditions do not prevent her from providing self-care in a correctional facility setting. As discussed in the prior order, she reported she experienced two syncopal episodes; she did not report the second incident to medical personnel for three weeks. (Docket 126 at p. 158). Despite reports of dizziness, back pain and unspecified pain, she is able to walk to medical appointments. Id. at pp. 51, 58. She reported, her chest tightness did not interfere with her daily walking exercise. Id. at p. 63. She is able to walk to the medical area of the prison during the "pill line." Id. At p. 143. Although walking may exacerbate some of her breathing problems, records show she is able to ambulate and care for herself.

Ms. Carroll has a variety of medical conditions; however, she appears to be receiving proper care while incarcerated, evidenced by medical records and Dr. Duncan's statement that she has been under his care since arriving at the facility. (Docket 120 at p. 4). "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Gould, 4:19-CR-40017-01, 2021 WL 872694, at 4 (D.S.D. Mar. 9, 2021).

Ms. Carroll tested positive for COVID-19 on January 25, 2022. (Docket 126 at p. 240). There is no evidence Ms. Carroll experienced difficulties due to her illness. Based on the medical records provided by the BOP, it seems Ms. Carroll was asymptomatic. Id. Thus, even though Ms. Carroll has medical conditions, specifically obesity, COPD and hypertension, that theoretically put her at a higher risk for severe illness from COVID-19, that has not been the case as of yet. It has been four months since Ms. Carroll tested positive, and

her condition remains stable.  The court finds Ms. Carroll's circumstances do not clear the high bar necessary to warrant compassionate release.

Against Ms. Carroll's medical conditions, the court must consider the steps the BOP has undertaken to manage the spread of COVID-19 within the facilities and to treat inmates who become infected.  These include sanitary and safety measures, restrictions on movement and visitation restrictions.  Id. The court also recognizes the BOP's implementation of a COVID-19 vaccination program and administration of vaccines to inmates and staff.  See BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last checked Apr. 10, 2023); see also www.bop.gov/coronavirus/ (BOP's "action plan" described in detail).

Ms. Carroll states she "has been given the opportunity to obtain the COVID-19 vaccine and has thoughtfully considered that option, she suffers from a long list of allergies and has had severe reactions to vaccines in the past.  Exhibit F at 17; Exhibit G at pp. 41, 52, 64, 103.  Accordingly, Carroll has followed the advice of her doctor and declined to get the vaccine for fear of additional illnesses or side effects." (Docket 125 at pp. 4-5).  There has been no evidence provided that a doctor advised Ms. Carroll to not receive the vaccine.  Dr. Duncan stated Ms. Carroll has opted not to receive the COVID-19 vaccine due to her reactions of anaphylaxis to multiple other vaccinations and medications.  (Docket 120 at p. 4).  This is not evidence that Dr. Duncan advised Ms. Carroll against receiving the vaccine but rather states Ms. Carroll's rationale for not receiving the vaccine.

As of April 10, 2023, at FCI Dublin, 192 staff and 1291 inmates were fully inoculated. Id. There have not been any deaths by inmates or staff. Id. Currently there is one inmate with COVID-19 and 673 inmates have recovered thus far. Id. There are currently no staff with COVID-19 and 122 staff have recovered. Id. This persuades the court that FCI Dublin is engaged in appropriate efforts to protect inmates against the spread of COVID-19 and the facility will continue to appropriately do so in the wake of COVID-19.

The court finds Ms. Carroll has not met her burden of proof and presented "extraordinary and compelling reasons" based on her medical conditions, age and conditions of confinement warranting a sentence reduction under § 3582(c)(1)(A)(i). Ms. Carroll's concern about incarceration during the COVID-19 pandemic is understandable, but it is not an "extraordinary and compelling reason." Although the court in no way underestimates Ms. Carroll's health conditions, she is receiving appropriate care while incarcerated. Her ailments, coupled with the present conditions at FCI Dublin, do not establish extraordinary and compelling reasons justifying compassionate release.

## C. 3553(a) Factors

The 3553(a) sentencing factors further show that compassionate release is not warranted. These factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed—

    a. to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant; and

    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

  Ms. Carroll stated, "[t]he nature and circumstances of Carroll's offense may have been egregious, but they were fueled by her addiction." She stated, "her course of conduct lasted a significant period of time, affected those she cared about deeply, and resulted due to [her] significant gambling addiction." (Docket 125 at pp. 10-11 (citing Docket 67 at ¶¶ 5-22, 65)). Ms. Carroll's presentence investigation report ("PSR") outlined her scheme to defraud numerous victims of significant amounts of money over more than 15 years. (Docket 67). The harm caused by Ms. Carroll's offenses was not limited to her monetary gains and likely her victims will never be fully restored for their financial losses and emotional turmoil. Many of her victims suffered substantial financial hardship and untold emotional upheaval as a result of Ms. Carroll's schemes. Id. at ¶ 30. For instance, one elderly couple turned over their entire life savings to Ms. Carroll and had to forego necessary medical treatment as a result. Id. Another person was unable to pay his mortgage and had to rely on financial support from his children. Id. Another person, who thought Ms. Carroll was her "best-friend," had to file bankruptcy, was forced to sell her home and was divorced by her husband as a result. Id. To further her scheme, Ms. Carroll used sophisticated means to convince her victims to give her money under false pretenses. Id. at ¶ 31. This included using letters acquired from a tax consultant and an attorney, which fraudulently

13

represented her net worth. Id. Her offense conduct spanned more than 15 years, during which time Ms. Carroll often played on the emotions of her victims to give her money. See, e.g. Docket 80 at pp. 46-47.

After reviewing the PSR with Ms. Carroll, hearing from the victims present in court, reading letters from other victims into the record, taking the sentencing recommendations of counsel and listening to Ms. Carroll's statements, the court departed upward from the calculated guideline range by two levels based on substantial harm to the indirect victims of Ms. Carroll's scheme. (Docket 87-1 at p. 5; see also Docket 82).

Ms. Carroll has minimal criminal history, as she only has one conviction which occurred in 1986 for driving under the influence. (Docket 67 at ¶ 52). She has had no disciplinary action while incarcerated at FCI Dublin. (Docket 126 at p. 244). She has participated in programing while in BOP's custody. Id. at p. 244. The court commends her positive behavior while incarcerated.

The 3553(a) sentencing factors further show that compassionate release is not warranted. The court concludes Ms. Carroll's sentence of 84 months continues to be appropriate for the seriousness of the crime she committed.

## ORDER

Based upon the above analysis it is

ORDERED that defendant's motions for compassionate release (Dockets 120 & 121) are denied.

Dated July 13, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE